UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JACOBSON, individually and on behalf of all others similarly situated, | Case No.  15-cv-02141-JD |
| Plaintiff, | |
| v. | **ORDER RE ARBITRATION** |
| SNAP-ON TOOLS COMPANY, et al., | |
| Defendants. | |

This putative class action arises out of a franchise relationship between named plaintiff Daniel Jacobson and defendants Snap-on Tools Company, LLC. ("Snap-on Tools") and Snap-on Incorporated ("Snap-on Inc."). Jacobson alleges that defendants exercised so much control over his work that he is an employee under California law and not a true franchisee. As a consequence, defendants failed to properly pay for employment-related expenses, overtime, meal and rest breaks. He sues on behalf of himself and a putative class of individuals who signed franchise agreements with defendants in California.

Jacobson's franchise agreement contains an arbitration provision and class action waiver. Defendants move to compel arbitration. The Court found the matter suitable for decision without oral argument under Civil Local Rule 7-1(b), Dkt. No. 30, and now orders the case to arbitration on all claims other than the California Private Attorneys General Act claims.

## BACKGROUND

As alleged in the complaint, Snap-on Tools sells automotive and shop tools and equipment through franchisees. Dkt. No. 1. The franchisees "carry out Snap-On's business by making weekly sales and service calls to existing and prospective" customers. *Id*. ¶ 13. Jacobson alleges that the franchisees' working conditions and conduct were so closely regulated and controlled by

Snap-on Tools and Snap-on Inc. that they were effectively employees rather than independent franchise operators. As a result, according to Jacobson, defendants got all the benefits of an employer-employee relationship and work force without the burden of honoring their employment law obligations. Jacobson alleges multiple claims against defendants under California employment laws, for unfair business practices, and under the Private Attorneys General Act ("PAGA").

At the heart of this motion is an arbitration provision in Snap-on Tools' Standard Franchise Agreement. This provision states in pertinent part that "any controversy or dispute arising out of, or relating to Franchisee's franchise business or this Agreement including, but not limited to, any claim by Franchisee . . . concerning the entry into, [or] performance under" the agreement "shall be submitted to final and binding arbitration as the sole and exclusive remedy for any such controversy or dispute." Dkt. No. 1-1 at § 25(B). An arbitrable dispute includes "any claims arising under state or federal laws." *Id.*

In Jacobson's case, the standard arbitration provision was modified by an Addendum for specific use with California parties. Dkt. No. 20-1, Exh. 1. The Addendum states that the "Franchise Agreement requires binding arbitration" and goes on to say that California residents can require arbitration to take place in California, that arbitration will proceed before an arbitrator with the American Arbitration Association ("AAA") at a location within California, and that Snap-on Tools will pay AAA fees and expenses up to $7,500 for demands of less than $75,000. *Id.*

Jacobson attests that he signed a Standard Franchise Agreement with Snap-on Tools on July 20, 2012 (the "Agreement") and received a copy of the California Addendum. Dkt. No. 20-1 ¶¶ 3, 8, 9. He ended his relationship with Snap-on Tools in November 2014. *Id.* ¶ 5.

Defendants now seek to enforce arbitration of the claims in the complaint. Dkt. No. 12. Jacobson argues that no enforceable agreement to arbitrate was ever formed and that, in any event, the PAGA claims are not subject to arbitration. Dkt. No. 20. He also argues that Snap-on Inc. was not a party to the Agreement and cannot compel arbitration. He does not contend that any other claim is outside the scope of the arbitration clause.

2

1    The Court finds that most of these arguments fail to hold water and that arbitration is

2 required in this case.  The one exception is the PAGA claims, which are not arbitrable.

3 Consequently, the Court grants the motion to compel arbitration in all respects outside the PAGA

4 claims.  The PAGA portion of the case will remain with the Court and is stayed pending the

5 outcome of the arbitration.

6                                      **DISCUSSION**

7 **I.     STANDARDS**

8    Defendant's motion to compel arbitration is governed by the Federal Arbitration Act

9 ("FAA").  The FAA's "overarching purpose . . . is to ensure the enforcement of arbitration

10 agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility*

11 *LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011).  "Agreements to arbitrate that fall within the

12 scope and coverage of the Federal Arbitration Act . . . must be enforced in state and federal

13 courts." *KPMG LLP v. Cocchi*, 132 S.Ct. 23, 24 (2011) (per curiam).  A district court's role under

14 the FAA is limited to determining (1) whether a valid, enforceable agreement to arbitrate exists

15 and, if it does, (2) whether the scope of that agreement encompasses the claims at issue. *Assi v.*

16 *Citibank Nat'l Ass'n*, No. 14-CV-03241-JD, 2015 WL 166919, at *1 (N.D. Cal. Jan. 13, 2015)

17 (citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)).  If the

18 party seeking to compel arbitration establishes both factors, the FAA requires the court to enforce

19 the arbitration agreement in accordance with its terms. *Id.*  Any doubts about the scope of

20 arbitrable issues should be decided in favor of arbitration. *Three Valleys Mun. Water Dist. v. E.F.*

21 *Hutton & Co., Inc.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

22    "[T]here is a presumption that courts will decide which issues are arbitrable." *Oracle Am.,*

23 *Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).  This presumption controls

24 "[u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter*

25 *Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation omitted).  Neither party here argues or

26 even suggests that arbitrability should be decided in another forum, and so the Court will resolve it

27 as necessary.

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    The parties agree that California law governs the Agreement.  Dkt. No. 12 at 1; Dkt. No.

2    20 at 1.  Consequently, Jacobson's attack on the validity of the arbitration provision will be

3    evaluated under California's "'ordinary state-law principles that govern the formation of

4    contracts.'"  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First*

5    *Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  A court may consider "generally

6    applicable contract defenses, such as fraud, duress, or unconscionability . . . without contravening

7    § 2 [of the FAA]."  *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).  The party

8    seeking arbitration bears the burden of proving the existence of a valid arbitration agreement, and

9    the party opposing arbitration has the burden of proving the agreement is unenforceable or any

10   other fact necessary to its defenses.  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,

11   622 F.3d 996, 1005 (9th Cir. 2010) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951

12   (1997)).

13   **II.    THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE**

14        **A.    The Parties Agreed To Arbitration**

15        Jacobson's opposition to arbitration leads with the contention that he never agreed to

16   arbitrate any disputes.  This argument is unpersuasive.  To be sure, this is not a case where an

17   arbitration clause was buried in a sneaky or underhanded fashion.  The arbitration provisions in the

18   Agreement that Jacobson signed were clear and straightforward.  Section 25(B) sets out the

19   arbitration terms in large font and plain English.  Dkt. No. 1-1 at § 25(B).  Section 32(K), which

20   appears right above Jacobson's signature at the end of the Agreement, highlights the arbitration

21   requirement in even larger, bold-faced font also in plain English.  *Id*. at § 32(K).  And the

22   California Addendum is equally clear in presentation and content.  Dkt. No. 20-1, Exh. 1.

23        Jacobson had the Agreement in hand when he signed it.  His complaint that no one at

24   Snap-on took the extra step of specifically explaining the arbitration provisions to him is of no

25   moment.  The California Supreme Court has held that a defendant is "under no obligation to

26   highlight the arbitration clause of its contract, nor [is] it required to specifically call that clause to

27   [plaintiff's] attention."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015).

28   Moreover, by signing the Agreement, Jacobson certified that he had read it and "has been

thoroughly advised with regard to the terms and conditions" of it.  Dkt. No. 1-1 at § 32(A).  He is, of course, still bound by the terms of the contract, including the arbitration clause, even if he did not read them.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 567 (9th Cir. 2014); *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement." Further, "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause.")

Jacobson nevertheless contends that there was no meeting of the minds over arbitration. Jacobson's counsel states in the opposition brief that Snap-on informed Jacobson "[b]efore he signed the FA [the Agreement]" that "the arbitration clause in the FA may be unenforceable." Dkt. No. 20 at 2; *see also id.* at 1 ("Snap-On told Plaintiff before he signed the Franchise Agreement that the arbitration clause was potentially unenforceable.")  Counsel relies heavily on *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095 (9th Cir. 1999), and *Winter v. Window Fashions Professionals*, *Inc*., 166 Cal. App. 4th 943 (2008), to contend that this pre-contract disclosure misled Jacobson into thinking arbitration was not a requirement that Snap-on can demand now.

This theory does not fly.  Jacobson does not show that he got any pre-contract disclosures about arbitration from Snap-On, let alone deceptive or confusing ones.  Counsel says that happened, but Jacobson's declaration does not.  All Jacobson attests to is that he received and signed the Agreement, and also received the California Addendum. Dkt. No. 20-1 ¶¶ 3, 8, 9.  He does not say that one preceded the other or that he was told before signing that the arbitration provision was potentially unenforceable.  To the contrary, he avers that "no one explained anything about arbitration" to him before he signed.  *Id.* ¶ 3.

This is highly problematic for Jacobson's contract formation attack.  The cases he relies on found that a conflict between a pre-contract advisement and the terms of contract signed afterward could show no meeting of the minds and cast doubt on the fairness of enforcing a disclaimed condition in the agreement.  *See Laxmi*, 193 F.3d at 1096; *Winter*, 166 Cal. 4th at 946; *see also Meadows v. Dickey's BBQ Rests., Inc.*, No. 15–cv–02139–JST, 2015 WL 7015396, at * 8

1    (N.D. Cal. Nov. 12, 2015) (highlighting that disclosures were made to plaintiffs in *Laxmi* and

2    *Winter* "before they executed Franchise Agreements.").  At their core, these cases are concerned

3    about misleading statements that failed to give adequate notice of the terms in a binding franchise

4    agreement.  *See Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1290-91 (9th Cir. 2006) (en banc)

5    (*Laxmi* directed to misleading or dishonest pre-contract disclosures).  The predicate of a deceptive

6    pre-contract advisement is missing here.  Jacobson does not tender any evidence that Snap-on

7    made any pre-contract representations at all to him about arbitration, and certainly not a

8    misleading one.  There is no evidence here of dishonest disclosures that preclude contract

9    formation.

10        This failure of proof defeats Jacobson's argument, and the contract documents he cites

11   further highlight the weakness of his position.  Jacobson pins his lack of formation theory on one

12   sentence reading "This provision may not be enforceable under California law," which appears at

13   the end of the arbitration section in the California Addendum.  Dkt. No. 20-1.  As outlined above,

14   the Addendum paragraph on arbitration focuses on details like where arbitration will occur and

15   how the parties will handle AAA's fees and expenses.  *Id*.  The pertinent question, then, is what

16   does "[t]his provision" refer to -- the immediately preceding sentence about fees and costs, or the

17   two immediate sentences, or the entire paragraph?  And how does "[t]his provision" reach through

18   the Addendum to the main Agreement to show that the parties could not reasonably expect that

19   their disputes would be arbitrated?  Jacobson does not proffer any answers or any evidence

20   indicating that the parties did not reasonably expect to be bound by the arbitration requirement.  In

21   these circumstances, his contention that he never agreed to arbitration falls flat.

22        **B.    The Agreement Is Enforceable**

23        Jacobson also challenges the arbitration clause as unconscionable, which he bears the

24   burden of demonstrating.  *See Sanchez*, 61 Cal. 4th at 911.  Under California law, a contract is

25   enforceable unless it is both procedurally and substantively unconscionable.  *Id*. at 910.  This is

26   judged on a sliding scale: "the more substantively oppressive the contract term, the less evidence

27   of procedural unconscionability is required to come to the conclusion that the term is

28

United States District Court
Northern District of California

6

1    unenforceable, and vice versa." *Id*. (*citing Armendariz v. Found. Health Psychcare Servs., Inc.,*

2    24 Cal. 4th 83, 114 (2000)).  Jacobson does not succeed on either score.

3                            **1.      Procedural Unconscionability Is Minimal**

4            Jacobson's procedural unconscionability arguments are nominal at best.  Procedural

5    unconscionability focuses on "oppression" and "surprise."  *Armendariz*, 24 Cal. 4th at 114.  For

6    "oppression," Jacobson makes the sole contention, without more, that the Agreement was a "take-

7    it-or-leave it" deal that California law "nearly always" treats as oppressive.  Dkt. No. 20 at 4.  That

8    may be so and is likely to be enough to establish a minimal showing of oppression.  *See*

9    *Nagrampa*, 469 F.3d at 1284 ("minimal" level of oppression present in a franchise agreement

10   where a party with vastly inferior bargaining power is presented with an arbitration clause on a

11   "take-it-or-leave it" basis).  But it is the barest of showings.  In fact, the California Supreme Court

12   recently upheld an arbitration requirement where the plaintiff made very similar claims of

13   adhesion, unequal bargaining power and inability to negotiate anything.  *See Sanchez*, 61 Cal. 4th

14   at 909.

15           Jacobson identifies even less in the way of genuine surprise.  He says the arbitration

16   provisions were "hidden," Dkt. No. 20 at 5, but in fact, as discussed, they were quite clear in

17   format and language.  Navigation to the arbitration provisions in the Agreement was also made

18   easy by the table of contents and bolded, underlined headings.  Dkt. No. 1-1 at iii, § 25(B).  A

19   reminder about the arbitration provisions is provided in boldface right above the signature line,

20   together with a cross-reference to the arbitration section number.  *Id*. § 32(K).  Jacobson was not

21   ambushed by a stealth arbitration clause.

22           Jacobson's protest that Snap-on failed to hand him a copy of the AAA rules also does not

23   raise the procedural unconscionability level.  *See Howard v. Octagon, Inc.,* No. 13–cv–01111

24   PJH, 2013 WL 5122191, at *15-*16 (N.D. Cal. Sept. 13, 2013) (finding the arbitration

25   agreement's clear incorporation of the AAA Rules and the availability of the AAA Rules to weigh

26   against finding procedural unconscionability).  Jacobson does not allege that the rules were not

27   available or explain how he was in any way disadvantaged by not being given a copy.

28

United States District Court
Northern District of California

### 2.    No Substantive Unconscionability

Because no more than minimal procedural unconscionability exists in this case, Jacobson needs to identify substantial evidence of "overly harsh" or "one-sided" results in the arbitration clause to prevent enforcement. *See Sanchez*, 61 Cal. 4th at 910.   He does not meet this test.

Jacobson challenges the Agreement's cost-splitting provision, but it is in step with California law. *See Nagrampa*, 469 F.3d at 1285 (fee splitting arrangement in franchise agreement not per se substantively unconscionable in light of California default rule of equally splitting arbitration costs). Jacobson cites to employment cases involving fee shifting provisions and seeks to invoke them by characterizing his Agreement as an employment contract.  But the Court must evaluate the Agreement in light of its "commercial setting, purpose, and effect" and the reasonable expectations of the parties "at the time [the contract] was made." *Sanchez*, 61 Cal. 4th at 911, 920 (internal quotations omitted), and the record shows Jacobson and Snap-On were contemplating a franchise contract at the time it was signed.  Among other facts, the agreement was clearly marked as a franchise agreement and Jacobson's immediate payment of approximately $31,000 in franchise fees to Snap-On confirms that the parties did not view it as an employment contract. *See* Dkt. No. 20-1 ¶ 4.  Consequently, the Agreement's fee-splitting provision is not inherently unconscionable.

Jacobson's concern that fee splitting might effectively close all doors to his claims is considerably more potent.  Jacobson attests that his debts, which are related to his relationship with Snap-on, so outweigh his assets and income that any level of filing fee would likely deter him. *See id*. ¶¶ 5-7.  While the arbitrator can reapportion fees during arbitration, there is no guarantee that would happen.  Consequently, to ensure that arbitration fees will not "effectively block[] every forum" for redress of Jacobson's claims, the Court severs the fee shifting provision as unconscionable under the circumstances of this case. *Sanchez*, 61 Cal. 4th at 920 (a court may use "unconscionability doctrine on a case-by-case basis to protect nonindigent consumers against fees that unreasonably limit access to arbitration"); *see also Kairy v. Supershuttle Int'l, Inc.*, No. C 08-02993 JSW, 2012 WL 4343220, at *8 (N.D. Cal. Sept. 20, 2012) ("fee splitting can be unconscionable where fees and costs are so prohibitively expensive as to deter arbitration").

Defendants do not oppose severing the fee-splitting provision. Dkt. No. 12 at 10.

Jacobson's other unconscionability attacks are unavailing. His challenges to the discovery provisions miss the mark. The Agreement accommodates reasonable discovery and offers the possibility of more as "ordered by the arbitrator" or "otherwise agreed by the parties." Dkt. No. 1-1 § 25(B); *see Fouts v. Milgard Mfg., Inc.*, No. C11-06269 HRL, 2012 WL 1438817, at *5 (N.D. Cal. Apr. 25, 2012) ("'access to essential documents and witnesses, as determined by the arbitrator(s)'" sufficient for arbitration, quoting *Armendariz*, 24 Cal. 4th at 106). Discovery of Jacobson's tax returns is not unfair because he specifically agreed to release them under the Agreement. Dkt. No. 1-1 § 12(C)-(D).

His concern that he must initiate a claim within one year of the challenged conduct is equally unpersuasive. Jacobson has made no showing that this would prevent him from "effectively pursu[ing]" a remedy or unfairly bars some portion of his claims. *See Ellis v. U.S. Sec. Associates*, 224 Cal. App. 4th 1213, 1222 (2014) (internal quotation omitted). The Court is retaining the PAGA claims, so Jacobson has no argument there against the one-year claim requirement.

The Court declines the invitation to invalidate the arbitration clause based on the issue preclusion or mediation provisions. Preclusion issues must be dealt with by the arbitrator under California law. *See Tectura Corp. v. LaBudde Grp., Inc.*, No. C 08-5752 SBA, 2009 WL 4723340, at *2 (N.D. Cal. Dec. 4, 2009) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000)). And defendants have represented that the mediation clause will not be invoked in this case. *See* Dkt. No. 21 at 9.

## III.    THE PAGA CLAIMS

Jacobson's non-class, representative claim for civil penalties under PAGA is not subject to arbitration. Jacobson's right to bring representative PAGA claims is not waived by the Agreement or preempted by the FAA. In *Iskanian v. CLS Transportation Los Angeles, LLC,* 59 Cal. 4th 348 (2014), the California Supreme Court held that pre-dispute waivers of representative PAGA claims are unenforceable under California law. *Id*. at 382-84. Defendants ask the Court to disregard that ruling because "[t]he vast majority of courts within the Ninth Circuit" have

United States District Court
Northern District of California

determined that the FAA preempts *Iskanian* and that allowing a PAGA representative action to remain in court "would contravene the FAA's purpose." Dkt. No. 12 at 14. Even assuming that were true at one point in time, an issue which the Court does not decide, developments have overtaken defendants' position. The Ninth Circuit recently held that "the FAA does not preempt the *Iskanian* rule." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 429 (9th Cir. 2015). Consequently, defendants' suggestion that the Agreement or the FAA forestall a representative PAGA claim is wrong.

The Ninth Circuit has emphasized, however, that representative PAGA claims are not inherently inarbitrable. "Nothing prevents parties from agreeing to use informal procedures to arbitrate representative PAGA claims." *Id.* at 436. Consequently, the terms of the parties' arbitration agreement determines the forum where these claims will be resolved. In this case, the parties manifested an intent in the Agreement not to require arbitration of representative claims. *See* Dkt. No. 1-1 § 25(B) ("The parties agree to arbitrate only controversies and disputes that are specific to Franchisee… and not issues that effect Snap-on franchisees generally," and "no arbitration under Section 25 shall include, by consolidation, joinder, class action or in any other manner, any person other than Franchisee"). Defendants expressly state in their briefs that they "have not consented to representative arbitration." Dkt. No. 12 at 15 n.8. Consequently, the Court retains the PAGA claims and stays them pending completion of the arbitration. 9 U.S.C. § 3; *Kilgore v. KeyBank, Nat'l Assoc.*, 718 F.3d 1052, 1057 (9th Cir. 2013) ("9 U.S.C. § 3 . . . requir[es] stay of civil action during arbitration").

## IV.    SNAP-ON INC.

Jacobson contends that Snap-On Inc., which did not sign the Agreement, cannot get the benefit of the arbitration clause. But as plaintiff himself recognizes, Dkt. No. 20 at 14, a non-signatory is entitled to arbitration when the claims against it involve "interdependent and concerted" events with a defendant who did sign and are "'founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219 (2009)). Throughout his complaint, Jacobson treats the two Snap-ons as a single actor. He consistently

refers to them collectively as "Snap-On" and "Defendants," and never alleges that either company ever undertook any independent or individual action.  The claims and operative facts against them are identical.  He alleges that both companies benefitted equally from the Agreement, and does not distinguish between them where he alleges -- drawing primarily on the Agreement -- that they exerted sufficient control over his work to render him an employee.  *Id*.  He also does not address why the Agreement's requirement of arbitration for any claims against an "affiliate of Snap-on" should not apply to a company he alleges is indistinguishable from Snap-on Tools.  Dkt. No. 1-1 § 25(B).  After electing to merge Snap-on Tools and Snap-on Inc. together for this lawsuit, Jacobson cannot argue, now that unitary treatment seems less convenient, that the Court should cleave them into totally independent actors.  Moreover, he proffers no facts at all to demonstrate why splitting the claims and parties for purposes of arbitration is the right thing to do.  Both defendants may enforce the Agreement's arbitration provision against him.

### CONCLUSION

The Court grants the motion to compel arbitration of the First through Ninth claims and dismisses them from the complaint.  Defendants expressly argued that these claims should proceed on an individual basis only in light of the Agreement's class action waiver, Dkt. No. 12 at 14, and Jacobson has not contested that point.  Consequently, the arbitration will be on an individual basis.  The arbitration will proceed on the conditions that Snap-on will pay for all AAA fees and costs regardless of the demand amount, and that the mediation provisions in the Agreement will not be cited or invoked for any reason.

Plaintiff's Tenth claim for representative PAGA civil penalties will remain with the Court and is stayed pending completion of the arbitration.  Parties are directed to file a status report with the Court every 3 months to keep the Court apprised of the arbitration status.

**IT IS SO ORDERED.**

Dated: December 9, 2015

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California

11